UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ANTHONY RIVERA,
*Plaintiff*,

v.

SCOTT SEMPLE, *et al.*,
*Defendants*.

No. 3:19-cv-433 (VAB)

**INITIAL REVIEW ORDER**

Anthony Rivera ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institution in Suffield, Connecticut, filed a Complaint *pro se* under 42 U.S.C. § 1983 against Commissioner Scott Semple, Warden Scott Erfe, Deputy Warden Hannah, Captain James Watson, Deputy Commissioner Monica Rinaldi, Captain D. Synott, Lieutenant Boyd-Carter, Correctional Officer Wright, Correctional Officer Vergas, Correctional Officer Vendura, Correctional Officer Pepacchio, and Warden William Mulligan ("Defendants"). Compl., ECF No. 1 (Mar. 22, 2019). Mr. Rivera alleges that Defendants violated his constitutional rights by extending his stay in restrictive housing and placing him on High Security Status without a hearing.

Mr. Rivera filed two motions to amend his Complaint but failed to submit a proposed amended complaint with either motion. Mot. to Amend, ECF No 9 (Dec. 5, 2019); Mot. to Amend, ECF No. 10 (Feb. 14, 2020). On March 25, 2020, the Court directed Mr. Rivera to file an amended Complaint containing all his allegations and claims on or before May 1, 2020, or the case would be dismissed. Order, ECF No. 14 (Mar. 25, 2020).

On April 20, 2020, Mr. Rivera filed his Amended Complaint, and listed eight defendants in the caption: Lieutenant Boyd-Carter, Captain Watson, Warden John Smith, Commissioner

John Smith, Counselor Zlutin Jahic, Property Officer Burns, MHU staff, and Intelligence officers. Am. Compl., ECF No. 15 (Apr. 20, 2020). Within the body of the Amended Complaint, Mr. Rivera identifies Commissioner John Smith as Commissioner Scott Semple, indicates that there were three intelligence officers, and adds two defendants, Captain D. Synott and Deputy Commissioner M. Rinaldi.[1]

For the reasons explained below, all claims are dismissed under 28 U.S.C. §1915A(b)(1).

## I.   BACKGROUND[2]

On January 26, 2018, the Intelligence Unit at Cheshire Correctional Institution in Cheshire, Connecticut ("Cheshire"), allegedly determined that Mr. Rivera was in possession of and had used a cell phone while incarcerated. Am. Compl. ¶ 2. Mr. Rivera conceded that he used the cell phone, but alleges he was not in possession of the phone when the Intelligence officers "arrested" him. *Id.* ¶ 3. Mr. Rivera's cellmate, an inmate he identifies as Lorenzo, allegedly confessed that he smuggled the phone into the correctional facility. *Id.*

Mr. Rivera was allegedly strip-searched and taken to the Restrictive Housing Unit ("RHU"). *Id.* ¶ 5. That afternoon, Mr. Rivera alleges he was taken to a small room to be interrogated. *Id.* ¶ 6. Three intelligence officers allegedly questioned Mr. Rivera about the phone, asking whose phone it was and whether he had used it. *Id.* ¶ 7. Mr. Rivera allegedly answered that he had not used the phone and did not know to whom it belonged. *Id.* The officers allegedly consulted a stack of papers in the room and stated that Mr. Rivera had used the phone to call his mother and father. *Id.* ¶ 8. Mr. Rivera then allegedly confessed that he had used the phone to

---

[1] Although Federal Rule of Civil Procedure 10(a) requires that all defendants be listed in the case caption, the Court will consider Captain Synott and Deputy Commissioner Rinaldi as defendants.

[2] Mr. Rivera's fact statement is on pages 8–16 and 57–58 of the Amended Complaint.

speak to his mother, "but didn't get through with [his father] . . . [because his] father was still in surgery." *Id.* When questioned again, Mr. Rivera allegedly denied watching pornography on the phone but admitted to watching movies and television programs, like *The Walking Dead*. *Id.* ¶ 9.

Mr. Rivera allegedly did not receive a disciplinary report within twenty-four hours of the discovery of his misconduct, as allegedly specified in the Department of Correction Administrative Directives, but received the disciplinary report twenty-eight days later. *Id.* ¶ 10.

On February 18, 2018, Mr. Rivera allegedly sent an Inmate Request to Lieutenant Boyd-Carter demanding that the disciplinary charge be dismissed for a due process violation. *Id.* ¶ 12. At the time he sent the request, Mr. Rivera had allegedly been in segregation for twenty-three days. *Id.* ¶ 13. In the Inmate Request, Mr. Rivera allegedly stated that Administrative Directive 9.5 affords correctional staff fourteen days to issue a disciplinary report and that the deadline may be extended but only with notice to the prisoner, which allegedly was not done. *Id.* ¶ 14.

After thirty-three days in segregation, Mr. Rivera's cellmate, inmate Lorenzo, allegedly noticed that Mr. Rivera "was having a mental health crisis." *Id.* ¶ 16. Inmate Lorenzo allegedly stopped a mental health worker who was passing the cell. *Id.* Inmate Lorenzo allegedly complained that no mental health staff had toured the unit since January 26, 2018, which allegedly violated Administrative Directive 9.4, which requires that any inmate in RHU for more than thirty days undergo a personal interview with a psychologist or psychiatrist. *Id.*

On March 1, 2018, Mr. Rivera allegedly stopped a passing mental health worker, stating that he had been in RHU for thirty-four days and his "head was not right." *Id.* ¶ 17. Mr. Rivera allegedly questioned why he had not been transferred and stated that mental health medication he had taken in the past was not helpful. *Id.* The mental health worker allegedly did not call Mr. Rivera to the mental health unit for evaluation, but "encouraged the plaintiff to utilize relaxation

techniques." *Id.* ¶ 19.

On March 2, 2018, Mr. Rivera allegedly told a mental health worker that the relaxation techniques were not working, that his head was "not right," and explained his history of mental health issues since 1998. *Id.* ¶ 20.

On March 6, 2018, while allegedly "still in distress," Mr. Rivera stated to a passing mental health worker that he had made multiple requests for mental health services and remained in distress. *Id.* ¶ 21. He allegedly exclaimed, "why are you violating my constitutional rights and violating your own Administrative Directives?!" *Id.*

On March 8, 2018, Mr. Rivera allegedly attempted to seek help again, and told a passing mental health worker that he had racing thoughts and did not feel safe. *Id.* ¶ 22. Mr. Rivera was allegedly told that he would be placed on Behavior Observation Status because he was displaying signs of depression and anxiety, and was at risk of self-harm. *Id.*

On March 9, 2018, Mr. Rivera again saw a passing mental health worker, and asked why he only saw them when they were passing his cell. *Id.* ¶ 23.

On March 12, 2018, Mr. Rivera allegedly complained to a mental health worker that he could not sleep at night because the light was kept on all day and because "the plaintiff hasn't had human contact for a while." *Id.* ¶ 24.

The following day, on March 13, 2018, Mr. Rivera allegedly reported to a passing mental health worker that the lack of human contact had made him depressed. *Id.* ¶ 25. The same day, Mr. Rivera allegedly wrote to Captain Watson asking why he had not been transferred from RHU. *Id.* ¶ 26. He allegedly noted that he should have been transferred out of RHU within three days of completing the sanctions for the disciplinary charges. *Id.* Captain Watson allegedly responded that Mr. Rivera was not on the transfer list. *Id.* ¶ 27.

The property of Mr. Rivera and Inmate Lorenzo, who also allegedly was Mr. Rivera's cellmate in general population, was allegedly packed together when they went to RHU. *Id.* ¶ 28. On March 14, 2018, Mr. Rivera was allegedly given five minutes to sort through the joint property before he was transferred. *Id.*

On March 16, 2018, Lieutenant Boyd-Carter allegedly informed Mr. Rivera that he could not appeal his disciplinary charges because he had pled guilty to two felonies, Misconduct and Contraband Class A. *Id.* ¶ 29. Mr. Rivera alleges that although Administrative Directive 9.5(8) required correctional staff to report serious criminal offenses to the Connecticut State Police for investigation and action, this did not happen in his case *Id.* ¶ 31.

On March 22, 2018, Mr. Rivera allegedly filed a grievance against Lieutenant Boyd-Carter and Captain Watson for violating his rights under the Fifth, Eighth, and Fourteenth Amendments. *Id.* ¶ 36.

On April 9, 2018, Mr. Rivera allegedly received a Restrictive Status Notification of Decision form. *Id.* ¶ 37. Mr. Rivera allegedly refused to cooperate with Counselor Jahic and would not sign the form, because he allegedly had not attended a hearing before being placed on High Security status. *Id.*

On April 19, 2018, Officer Burns allegedly called Mr. Rivera to the Admitting and Processing area to retrieve his property. *Id.* ¶ 38. Officer Burns allegedly tried to give Mr. Rivera his game console without the games. *Id.* ¶ 39. Mr. Rivera allegedly refused to accept the console "with missing bottoms" and demanded that the intelligence officers pay to repair the console and return three games. *Id.*

Mr. Rivera claims he has exhausted all administrative remedies. *Id.* ¶ 40. He asserts the following claims for relief: violations of the Fifth Amendment for Defendants' inspection and

destruction of Mr. Rivera's property, specifically his game console, *id.* ¶ 41; violations of the Eighth Amendment for Defendants' failure of deliberate indifference to his psychological distress, *id.* ¶ 42; violations of the Due Process Clause of the Fourteenth Amendment, *id.* ¶¶ 43–45.

On March 22, 2019, Mr. Rivera filed his Complaint, and on April 20, 2020, this Amended Complaint. Compl.; Am. Compl.

## II.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'") (quoting 28 U.S.C. § 1915A).

The Federal Rules of Civil Procedure require that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and assert a cause of action with enough heft to show entitlement to relief and

"enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s] devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### III.  DISCUSSION

Mr. Rivera includes the following claims in his Amended Complaint: (1) the (unnamed) intelligence officers violated his Fifth Amendment rights by destroying his game console; (2) Defendants were deliberately indifferent to inmate safety in violation of the Eighth Amendment by failing to curb the psychological abuse of inmates; (3) Defendants violated his Fourteenth Amendment right to due process by denying him judicial proceedings and impersonating law enforcement officers; (4) certain Defendants' supervisory liability for failure to ensure that his

7

rights were not violated; and (5) Defendants Rinaldi and Synott failed to ensure that their agents did not violate his constitutional rights to "a fair due process." Am. Compl. ¶¶ 41–45.

### A. Claims Related to Property

The Fifth Amendment Due Process Clause applies to the federal government, and the Due Process Clause of the Fourteenth Amendment applies to the states. *Welch v. United States*, 136 S. Ct. 1257, 1261-62 (2016). As no Defendant is a federal actor, the Fifth Amendment is not applicable to Mr. Rivera's claim that Defendants unconstitutionally destroyed his console. Any Fifth Amendment claims are dismissed under 28 U.S.C. § 1915A(b)(1). The Court will, however, consider his claim under the Fourteenth Amendment.

The Fourteenth Amendment Due Process Clause protects against the deprivation of liberty and property without due process of law. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Although the Fifth Amendment's Due Process clause "provides protection for convicted prisoners and pretrial detainees alike against the deprivation of their property without due process of law," *Bell v. Wolfish*, 441 U.S. 520, 554 (1979), a prisoner has no due process claim based on an unauthorized deprivation of property by a state employee, whether that deprivation is intentional or negligent, so long as there is a meaningful state post-deprivation remedy for the loss, *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

Connecticut inmates may file a claim with the Lost Property Board and, if that claim is denied, can file a claim with the Office of the Connecticut Claims Commissioner. *See Administrative Directive Chapter 9 Classification*, DEPARTMENT OF CORRECTION, portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited May 21, 2020); Conn. Gen. Stat. § 4-142. The Second Circuit has found that these remedies are adequate state post-conviction remedies. *See Riddick v. Semple*, 731 F. App'x 11, 13–14 (2d Cir. 2018) (finding Connecticut had adequate

8

remedies for prisoner's lost property claim).

As a result, Mr. Rivera cannot state a cognizable Section 1983 claim regarding his lost or destroyed game console. Accordingly, the property claim is dismissed under 28 U.S.C. § 1915A(b)(1).

### B.  Claim of Deliberate Indifference to Safety

To state a claim for deliberate indifference to safety based on conditions of confinement, Mr. Rivera "must show that the alleged condition was sufficiently serious and that the defendants acted with a sufficiently culpable state of mind, that is, that they acted maliciously and sadistically to cause harm." *Orr v. Marquis*, No. 3:18-CV-1908 (MPS), 2019 WL 161504, at *3 (D. Conn. Jan. 10, 2019) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). The defendants must have been aware of and deliberately disregarded an excessive risk of harm to Mr. Rivera. *Id.* (citing *McClandon v. Maldonado*, No. 3:16-cv-2136 (SRU), 2017 WL 3821792, at *5 (D. Conn. Aug. 31, 2017)).

Mr. Rivera alleges that the defendants were deliberately indifferent to inmate safety in violation of the Eighth Amendment by failing to curb the psychological abuse of inmates. Construing his Amended Complaint liberally, as the Court must at this stage, reveals only two sets of allegations that could apply to a deliberate indifference claim.

First, Mr. Rivera alleges that he was unable to sleep because the light in the cell was on all day. Am. Compl. ¶ 24. However, his inmate clinical record on March 12, 2018, when he allegedly complained to a passing mental health worker, indicated that Mr. Rivera reported to mental health staff had he had slept well two nights, but "not last night," Ex. 8: Clinical Record, ECF No. 15 at 50 (indicating treatment notes on March 6, March 11, and March 12, of 2018). Even if the light were on all day and night instead of only during the day, this condition is not

9

unconstitutional. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (noting that constant light, possibly dimmed at night, is a condition common to most solitary confinement facilities). Mr. Rivera fails to allege facts suggesting that the defendants were aware of and deliberately disregarded a serious risk of harm to him.

Second, Mr. Rivera describes a lack of mental health treatment throughout his Amended Complaint. He alleges that he spoke to mental health staff when they passed his cell, and although they gave him some recommendations, he was never called to the mental health unit for a personal interview or evaluation.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical or mental health needs. *Spavone v. N. Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to a serious medical or mental health need, the plaintiff must show both that his need was serious, and that the defendant acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). There are both objective and subjective components to the deliberate indifference standard. *See Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994). Objectively, the alleged deprivation must be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). The condition must produce death, degeneration, or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). Subjectively, the defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of his actions or inactions. *See Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See id.* Nor does a

10

disagreement over the treatment provided demonstrate deliberate indifference. *See Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)). "It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703.

Although Mr. Rivera alleges that he was denied mental health treatment, he attaches to his Amended Complaint mental health treatment notes indicating that he was seen one-on-one at his cell on March 1, 2018, and on several subsequent dates. *See* Exs., ECF No. 15 at 41, 56, 50 (indicating treatment notes for March 1, 2, 6, 11, and 18, all in 2018). The treatment notes indicate that Mr. Rivera was seen when mental health staff made rounds in the unit, not when he stopped passing staff as alleged. *Id.*

In addition, contrary to his claims here, on March 2, 2018, Mr. Rivera reported that his mental health issues were not related to his confinement in segregation. *Id.* at 46. It appears from the records submitted, that Mr. Rivera's claim is that he was seen at his cell in response to his requests for treatment rather than in the mental health unit. The Constitution does not mandate the place mental health treatment is provided. Thus, Mr. Rivera has not alleged facts supporting a claim for deliberate indifference to mental health needs.

Even if the Court were to determine that Mr. Rivera's allegations state a claim for deliberate indifference to mental health needs, he has not identified a proper defendant for such a claim. Mr. Rivera includes "MHU staff" as a Defendant. The Court can effect service only on specifically named Defendants.

As Mr. Rivera does not name any staff member who denied him mental health treatment

or who was responsible for ensuring that proper mental health treatment was provided, he fails to identify any Defendant for his claim, and these claims will be dismissed under 28 U.S.C. § 1915A(b)(1).

### C. Due Process Claims

Mr. Rivera alleges that Defendants violated his Fourteenth Amendment right to due process by denying him initiation of judicial proceedings. Mr. Rivera alleges no facts suggesting that he was denied the ability to file any action in court. The Court assumes, therefore, that he is asserting a claim based on his prison disciplinary proceedings.

To assert due process claims, Mr. Rivera must show that he had a protected liberty interest in remaining free from the conditions imposed and, if he had such an interest, that the defendants deprived him of the interest without affording him due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001)). No liberty interest in avoiding more restrictive confinement, such as punitive or administrative segregation, arises under the Constitution itself. *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005). Such an interest may arise, however, if state "statutes or regulations require, in 'language of an unmistakably mandatory character,' that a prisoner not suffer a particular deprivation absent specified predicates." *Tellier v. Fields,* 280 F.3d 69, 81 (2d Cir.2000) (quotation marks omitted) (quoting *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir.1999)).

Before a cognizable liberty interest exists, however, the new placement must "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson,* 545 U.S. at 223 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). "[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered." *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000). A very long period of

segregation confinement—longer than 305 days—is sufficiently atypical to trigger due process protections. *Palmer v. Richards,* 364 F.3d 60, 65 (2d Cir. 2004).

Mr. Rivera alleges that he was confined in restrictive housing for twenty-six days before receiving the disciplinary report. The Second Circuit has held that segregated confinement for less than thirty days fails, as a matter of law, to show that the prisoner was subjected to an atypical and significant hardship. *See Palmer*, 364 F.3d at 65–66 (noting Second Circuit has "affirmed dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in [restrictive housing]—and there was no indication that the plaintiff endured unusual [restrictive housing] conditions"). Thus, there is no basis for a due process claim based on the twenty-six-day period.

Even if the Court were to consider additional days until the disciplinary hearing, time Mr. Rivera does not specify, his claim fails. The Second Circuit has held that confinement in restrictive housing for less than 101 days, without more, does not constitute an atypical and significant hardship sufficient to state a claim under *Sandin v. Conner*, 515 U.S. 472 (1995); *Mclellan v. Chapdelaine*, No. 3:16-cv-2032(VAB), 2017 WL 388804, at *4 (D. Conn. Jan. 27, 2017) (citing *Borcsok v. Early*, 299 F. App'x 76, 78 (2d Cir. 2008) and *Sealey v. Giltner*, 197 F.3d 578, 589 (2d Cir. 1999)). Again, Mr. Rivera alleges no facts suggesting that his confinement in RHU was especially harsh.

Mr. Rivera also alleges that he was classified to High Security status without a hearing. Before he can challenge the procedures used to classify him to High Security status, Mr. Rivera must establish that he has a liberty interest in avoiding this classification. Although, as noted above, the Constitution does not afford inmates a liberty interest in avoiding transfer to more

adverse conditions of confinement, a liberty interest may be created under state law subject to the limitation set forth in *Sandin*. *Wilkinson*, 545 U.S. at 221–22; *see Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (*Sandin* analysis appropriate for due process challenge to placement in restrictive housing).

Mr. Rivera includes no allegations as to either the conditions or duration of his confinement on High Security status. Mr. Rivera was specifically instructed by the Court on two occasions that he must include all facts supporting his claims in the Amended Complaint. *See* Order, ECF No. 12 (Feb. 28, 2020) ("Mr. Rivera may amend his Complaint once as of right; however, without an amended Complaint, the Court cannot properly review Mr. Rivera's claims. Accordingly, Mr. Rivera is directed to file an amended Cmoplaint containing all of his allegations and claims . . . ."); Order, ECF No. 14 (Mar. 25, 2020) ("Mr. Rivera has failed to file an Amended Complaint containing all of his allegations and claims. . . . If Mr. Rivera fails to do so, the Court will dismiss the case."). Because Mr. Rivera alleges no facts suggesting that he was subjected to an atypical and significant hardship, he fails to state a plausible due process claim relating to his High Security placement.

The only other applicable allegation is Mr. Rivera allegedly been told that he could not appeal the disciplinary finding because he pled guilty; however, Mr. Rivera has no constitutionally protected right to appeal a guilty plea to a prison disciplinary charge. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974) (omitting right to appeal from list of minimal due process requirements at prison disciplinary hearing). In addition, correctional directives specifically preclude an appeal and, in pleading guilty, Mr. Rivera acknowledged that there was no appeal. Administrative Directive 9.5 section 16(h)(iv)(2) provides that when pleading guilty to a disciplinary charge, the inmate signs the back of the disciplinary report acknowledging that

no appeal is permitted from a guilty plea. *See Administrative Directive Chapter 9 Classification*, DEPARTMENT OF CORRECTION, portal.ct.gov/DOC/AD/AD-Chapter-9 (last visited May 21, 2020). Thus, the lack of appeal also does not state a cognizable due process claim.

Accordingly, all due process claims are dismissed under 28 U.S.C. § 1915A(b)(1).

### D.    Claims Related to Impersonating Law Enforcement

Mr. Rivera contends that Defendants also violated his right to due process by impersonating law enforcement officers. The Court cannot discern a basis for the claim. The only allegation that could be relevant to this claim is Mr. Rivera's allegation that Defendants did not report his "serious criminal offense" to the Connecticut State Police as provided under Administrative Directive 9.5 section 8. Am. Compl. ¶ 31. Because the Court can discern no constitutional right to be referred for prosecution, this claim is dismissed under 28 U.S.C. § 1915A(b)(1).

### E.    Due Process Claims—Supervisory Liability

Finally, Mr. Rivera asserts claims for supervisory liability related to his due process claims, both as a general claim against unspecified Defendants and a specific claim against Defendants Synott and Rinaldi. Am. Compl. ¶¶ 44–45.

Where the court has dismissed the underlying constitutional claims, a claim for supervisory liability premised on the same facts is not cognizable. *Lawrence v. Evans*, 669 F. App'x 27, 28 (2d Cir. 2016); *see also Raspardo v. Carlone*, 770 F.3d 97, 127 (2d Cir. 2014) ("Liability cannot be imputed to [the supervisor] without an underlying constitutional violation."); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999) ("Of course, for a supervisor to be liable under Section 1983, there must have been an underlying constitutional violation.").

Because the Court has dismissed Mr. Rivera's due process claims, there is no underlying constitutional claim upon which to base a claim for supervisory liability. Accordingly, the claims for supervisory liability are dismissed under 28 U.S.C. § 1915A(b)(1).

### IV. CONCLUSION

For the reasons stated above, the Amended Complaint is **DISMISSED** under 28 U.S.C. § 1915A(b)(1).

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of May, 2020.

/s/ Victor A. Bolden

VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE